IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT COOPER, #209556 | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v | * | Civil Action No.  JFM-14-1291 |
| | * | |
| BRAD BRINEGAR, et al. | * | |
| FRANK C or F DAVIS,[1] | * | |
| B. PAYTON, | * | |
| CPL. LOGGSON, | * | |
| CPL. WILBURN, | * | |
| CPL. BARB, | * | |
| CPL. HENDRICKS,[2] | * | |
| CHIEF MICHAEL P. THOMAS, | * | |
| CPL. S.A. WILSON, | * | |
| CPL.R. CONNER,[3] | * | |
| CPL. J. FONTAIN, | * | |
| CPL. HETZ | * | |
| CPL. M. DAVIS | * | |
| OFFICER HENDRICKS, | * | |
| S. DILLEY,[4] | * | |
| FRANK BISHOP, JR., | * | |
| | * | |
| Defendants. | * | |
| | ********** | |

**MEMORANDUM**

Pending is self-represented plaintiff Robert Cooper's complaint filed pursuant to  42 U.S.C. § 1983, as supplemented. (ECF 1, 3).  Defendants Warden Frank B. Bishop, CO II Brad

---

[1]  Counsel has accepted service on behalf of Clinton Davis. The complaint contains no claims against C Davis, Clinton Davis  or F. Davis Frank Davis, and these defendants shall be dismissed.

[2]  Service has not been accepted on behalf of CPL. or Officer Hendricks, both of whom are listed as defendants.  The complaint contains no claims against these individuals and they shall be dismissed.

[3]  Service has not been obtained on  R. Conner. As no claims are raised against him, he will be dismissed.

[4]   Service has not been obtained on  S. Dilley. As claims no are stated against him, he will be dismissed as a defendant.

Brinegar, CO II Clinton Davis, Sgt. Brett Payton, CO II William Logsdon,[5] CO II Brett Wilburn, CO II Charles Barb, CO II David Hedrick, Chief Michael Thomas, CO II Steven Wilson, CO II Jeremiah Fontaine,[6] CO II Nicholas Hetz, COII Matthew Davis, Mental Health Professional Counselor Supervisor Ronald Weber,[7] by their counsel, have filed a motion to dismiss or, in the alternative, motion for summary judgment. (ECF 15). Cooper was provided an opportunity to file an opposition reply, with materials in support in accordance with the ruling *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975), and has filed an opposition. (ECF 31).[8]

After considering the pleadings, exhibits, and applicable law, the court finds a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For reasons to follow, defendants' motion (ECF 27) will be granted.

## PLAINTIFF'S CLAIMS

Cooper is presently an inmate at the Western Correctional Institution. His claims are premised on two separate incidents. First, Cooper claims he was subjected to excessive force on February 25, 2014 by defendants Hetz, M. Davis, B. Wilburn, Logsdon, Brinegar, and Barb.[9] Cooper claims they took him to the lobby of Housing Unit 4 where they kicked, beat, and sprayed him with pepper spray, while stating "Go tell this." Cooper alleges that when he was

---

[5] Officer Logsdon's surname shall be corrected on the docket. Counsel states he is on extended leave. (ECF 15-1 n. 2).

[6] Officer Fontaine's surname shall be corrected on the docket. Fontaine is not mentioned in the body of the complaint and no claims are raised against him. Accordingly, Fontaine will be dismissed.

[7] Weber is not mentioned in the body of the complaint and no claims are raised against him. Accordingly, Weber will be dismissed.

[8] Cooper filed a declaration of the veracity of his claims with his supplement. (ECF 3, p. 8). His general denial opposing defendants' dispositive motion is unsupported by verified exhibits or declarations. (ECF 18).

[9] Defendants have provided verified exhibits demonstrating Barb did not work on February 25, 2014 or March 3, 2014, when the incidents at issue took place. Accordingly, Barb will be dismissed.

picked up off the floor there was a hand-held video camera[10] on the scene. Cooper claims he was then taken to a strip cage where the kicking, beating, and use of pepper spray continued. (ECF 1, ¶ 1, ECF 3).

Next, Cooper claims on that March 3, 2014, Officers M. Davis, Beal, and V. Lark[11] "allowed" his cellmate to injure him with a meal tray. (ECF 1, ¶ 2, ECF ¶ 2). Cooper claims that at approximately 11:45 a.m. that day he informed Officer Lark that he did not feel safe in the cell with his cellmate and asked to be placed on suicide watch. Cooper claims Lark "just walked away from the cell without saying anything." *Id*. Later that day, at approximately 2:45 p.m., Cooper informed defendants Davis and Beal during cell count that "his cellmate had assaulted and battered him with a dietary hard tray and that his eye was swollen." Cooper avers Davis looked at his eye, said "I don't see anything," and walked away. *Id.* Cooper claims Davis and Beal came to his cell five minutes later, removed him from his cell, and repeatedly hit him with a meal tray. Cooper claims he was then taken to the strip cage, sprayed with pepper spray, and left without his "life threatening medications and basic human needs."[12]

Cooper is requesting damages and injunctive relief, including preliminary injunctive relief.

---

[10] The record indicates there was no video recording of this incident. (ECF 15-3, p. 2). Defendants did not provide an affidavit in this regard.

[11] V. Lark was not named as a defendant in the complaint. (ECF 1). Cooper named him as a defendant in his subsequently filed supplement. (ECF 3). Service has not been obtained on V. Lark, nor was he listed on the docket as a defendant. For reasons discussed herein, even if service were obtained, summary judgment is appropriate in favor of defendants as to this claim.

[12] Cooper does not allege the length of time he was without medication or basic needs, nor allege that he sustained resulting injury.

**LEGAL STANDARD**

I.     **Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).   In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Generally, when ruling on a 12(b)(6) motion, the court assumes that the facts alleged in the complaint are true and draws all reasonable factual inferences in the nonmoving party's favor. *Edwards,* 178 F.3d at 244. A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555(internal quotations omitted).

II.    **Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure states a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  In considering a

motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557 (2009); *Scott,* 550 U.S. at 378. The court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express* Corp., 190 F.3d 624, 633 (4th Cir. 1999).

Recognizing that Cooper is a self-represented litigant, the complaint will be held to a less stringent standard than that drafted by an attorney. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (discussing liberal construction of pro se pleadings). Federal courts are charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The requirement of liberal construction does not mean, however, that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

## DISCUSSION

In support of their dispositive motion, defendants assert defenses of respondeat superior,

lack of exhaustion of claims, and failure to state a claim. Additionally, they maintain there are materials facts in dispute to suggest a constitutional violation has occurred, and they are entitled to summary judgment in their favor as a matter of law. Further, they posit that even if this court were to find a violation of constitutional rights, they are entitled to summary judgment on the basis of qualified immunity. Defendants have submitted verified exhibits and declarations in support of their motion.

**I.   Defendant's Exhibits**

    **A.   February 24, 2014 Incident**

        **1.   Reports**

Defendants' account of the incident is set forth in the Use of Force Report. The report indicates Officer Hill was returning Cooper to his cell following a medical appointment. After Hill removed Cooper's handcuffs, Hill witnessed Cooper turn and start striking Coates, his cellmate, on his head, face, and torso. Hill called for assistance by radio and issued several verbal commands for Cooper to cease the assault, which Cooper ignored. Officer Matthew Davis arrived and administered a short burst of pepper spray to Cooper's face through the portal in the cell door. Cooper, however, continued assaulting Coates.

Davis' spray applicator was empty or malfunctioning. Officer Hetz arrived and administered a short burst of pepper spray to Cooper's face. After the second application, Cooper stopped his assault. Both inmates were handcuffed and taken to the medical room where they were treated for pepper spray exposure and minor abrasions, and provided a shower. Coates was placed back in his cell and Cooper was assigned to a new cell without further incident. (ECF 15-3, pp. 71-81).

On February 25, 2014, Coates wrote a statement stating "Officer Hill placed Cooper back

in my cell and after removing the handcuffs Hill told Cooper that he was moving Cooper turned and began hitting me." *Id*. at 82.  Cooper refused to provide a statement. *Id*. at 83.

On February 28, 2014, Cooper wrote a letter of complaint to Congressman Elijah Cummings about the incident. Thereafter, the Internal Investigative Unit (IIU) investigated Cooper's concerns. (ECF 15-3, pp. 20-22, 9). Captain Bradley Butler, who conducted the IIU investigation, interviewed Cooper, Wilburn, Logsdon, Hetz, Matthew Davis, Michael Davis, and Brinegar. Butler also reviewed Cooper's medical records, the officers post assignment work sheet for February 25, 2014, and the Use of Force Report. The IIU investigator determined the facts set forth in the Use of Force Report were consistent with statements provided by correctional staff during his interviews. *Id*. at 17.

Cooper's account of the incident differs from his complaint allegations. Cooper told the interviewer that while en route to his cell after a medical visit on February 25 2014, he informed Hill that he and his cellmate were not getting along because the cell mate "keeps getting my walks taken for fishing."[13]  Hill said he would see what he could do to work it out, but that Cooper needed to return to the cell.  When Hill removed Cooper's cuffs,  Coates covered the cell window and told Cooper, "We are gonna settle this right now" and a fight between Cooper and Coates ensued.  (ECF 15-3, p. 9).  Cooper claims Hill returned, the cell door opened, and Hetz administered pepper spray.  The cellmates were separated and Cooper was placed in the library to await medical evaluation.  Cooper alleges the library door opened, and he was pepper sprayed a second time.  Cooper told the IIU interviewer that he was punched, kicked, stomped in the library by Barb, Logsdon, Hetz, Michael Davis, Brinegar, and Matthew Davis. *Id*.  Cooper

---

[13]  Fishing refers to a method used by inmates to communicate with one another by using a line to pass messages or other objects between cells. *See e.g. French v. Allegany County*, 2012 WL 4324901 *5, n. 1 (D. Md. September 18, 2012).  As such, Cooper does not allege that he felt unsafe with his cellmate. Further, Cooper does allege in his federal complaint that he told Hill he was not getting along with his cellmate.

claimed Hetz sprayed him with pepper spray again in the library. *Id*.

Cooper told the IIU investigator he was assaulted again in the "strip cage" by Officers Faust and Hill. *Id*. at 10. Cooper stated he sustained a cut on his elbow and a "fat" or swollen lip. *Id*. Cooper stated he thought he was assaulted for previously filing charges against correctional officers. *Id*.

The IIU investigator interviewed Wilburn who denied assaulting Cooper. Logsdon was interviewed and stated he was working in the Armory on February 25, 2014, which was verified in the Post Assignment Worksheet for that day. Matthew Davis, whose statement to the IIU investigator was consistent with the information he provided in the Use of Force Report, denied assaulting or witnessing other officers assault Cooper in the library. Hetz's statements to found consistent with those he made in the use of force report. Further, Hetz denied assaulting or witnessing anyone else assaulting Cooper in the library. Brinegar told the interviewer that he was in the control center and was not involved in the incident. Brinegar stated he could not see the library from the control center. Officer Faust told the investigator that he was not present during the incident, and denied observing anyone assault Cooper in the library. Officer Michael Davis stated that he escorted Cooper to a strip cage in the property room. Michael Davis denied assaulting or witnessing anyone else assault Cooper in the library. Officer Hill was not interviewed because he was on leave for a medical condition. *Id*. at 11-17.

The IIU report concluded Cooper was actively assaulting his cellmate Coates at the time of the use of force. *Id*. The IIU report also determined Cooper's injuries were inconsistent with his complaints of assault by correctional officers. The report concluded "[b]ased on the lack of evidence to support Inmate Cooper's allegation of assault and staff denying any assault occurred, no criminal charges were obtained and the case was closed." *Id*. at 18.

Cooper's medical record from February 25, 2014, indicates he had a minor abrasion on the back of his right elbow, and the bleeding was under control. Cooper also had a minor abrasion on his lower lip with no active bleeding or swelling noted. The abrasions were cleaned with sterile saline. *Id*. at 87. Coates had a minor abrasion on his forehead which was cleaned with sterile solution. *Id.* at 89.

### 2. Declarations

Officer Matthew Davis attests that on February 25, 2014, he responded to a radio call involving a fight. (ECF 15-4). Upon arrival, Davis observed Officer Hill directly ordering Cooper and Coates to stop fighting. Davis observed Cooper punching Coates with a closed fist while Coates had his arms up trying to cover his face. Davis ordered Cooper to stop fighting or pepper spray would be used. Cooper continued assaulting Coates. Davis again ordered Cooper to stop fighting, and Cooper did not comply. Davis then applied a short burst of pepper spray which depleted his pepper-spray canister. Cooper, however, continued to assault Coates. Officer Hetz administered a second burst of pepper spray to Cooper's face. Cooper stopped assaulting Coates and both inmates were handcuffed. Davis assisted in escorting Cooper to the medical room. Pending the arrival of medical staff, Cooper was temporarily placed in the library. Davis denies stating or hearing any other correctional officer say "Go tell this" to Cooper. *Id*. Davis denies kicking, assaulting, beating or otherwise assaulting Cooper or observing any other office do so.

Officer Nicholas Hetz states in his declaration that on February 25, 2014, he observed Officer Davis giving multiple direct orders to stop fighting or pepper spray would be applied. (ECF 15-5). Hetz observed Cooper hitting Coates with closed fist punches to the head and torso. Hetz observed Officer [Matthew] Davis apply a short burst of pepper spray which depleted his

9

pepper spray canister. Cooper continued assaulting Coates. Hetz then applied a short burst of pepper spray to Cooper's face. Cooper then ceased his assault on Coates. Hetz denies stating or hearing any other correctional officer say "Go tell this" to Cooper. *Id.* Hetz denies kicking, assaulting, beating, or otherwise assaulting Cooper or observing any other officer do so.

Officer Brad Brinegar attests that on February 25, 2014, he was working in the control center. Brinegar was aware that Hill had reported a fight over the radio, but Brinegar did not respond to the call. (ECF 15-6). Brinegar also explains the configuration of the control center does not allow him to see the library where Cooper was placed. Brinegar took photographs of Cooper, Coats, and Officers Hill, Hetz, and Matthew Davis after the incident. (ECF 15-6; ECF 15-3, pp. 95-101).

Officer Brett Wilburn denies stating or hearing any other correctional officer say "Go tell this" to Cooper on February 25, 2014. (ECF 15-8). Wilburn denies kicking, assaulting, beating, administering pepper spray or otherwise assaulting Cooper or observing any other officer do so. He denies that he retaliated against Cooper.

### B. March 3, 2014 Incident

#### 1. Reports

The Use of Force Report of this March 3, 2014 incident states that on March 3, 2014 Officer J. Bennett[14] was conducting securing rounds when he heard a loud banging noise. Upon investigation, he found Cooper kicking his cell door. Bennett asked Cooper about his actions and Cooper would not respond. Cooper went on to complete his rounds and heard someone yelling. He went back to investigate and found Cooper violently banging his head on the cell door. Bennett gave several loud order for Cooper to stop in order to keep him from harming

---

[14] Bennett is not named as a defendant in this case.

himself. When Cooper refused, Bennett applied a short burst of pepper spray to Cooper's face. At this point, Cooper stopped banging his head on the door. Officer Davis placed Cooper and his cellmate Jovan Wood in handcuffs. Both inmates were evaluated in the medical unit and treated for pepper spray exposure. Cooper was also treated for minor injuries and the psychology department was notified. Wood refused a decontamination shower and was returned to his cell. The incident was not captured on video surveillance. Cooper refused to provide a statement. (ECF 15-9, pp. 36-48).

Wood's statement reads "My cell buddy Cooper started banging his head on the cell wall yelling for the C/O's [correctional officers]. C/O's s came to the door and he refused to stop. C/O's sprayed mace on Cooper. I was standing at the back of the cell facing the window. *Id.* at 47.

Cooper's medical records demonstrate that he was seen in the medical unit after the incident. Cooper told the nurse that he was hit by a food tray. Cooper's medical report reads:

> "Pt [patient] was involved in a fight. Pt has hematoma to his right eye with a small laceration to his right eye that is free from drainage. Pt. has a superficial laceration to his left arm and his left hand that is free from drainage. Pt. has a superficial laceration to his right forearm that is free from drainage.

*Id.* at 49. Wood's medical report reads "Pt was involved in a fight, pt has not visible injuries." *Id.* at 51.[15]

Cooper submitted a letter to the IIU alleging corrections staff allowed his cellmate to assault him with a feeding tray. Detective Rodney Likin was assigned to conduct an IIU inquiry and interviewed Cooper. Cooper's statement to Likin is notably different than the allegations he presents in the instant complaint. Cooper told the IIU interviewer:

> On 2/25/14, they moved me in with this dude named Jovan Wood. On 3/3/14

---

[15] This third party account set out in the medical record is inconsistent with Wood's handwritten statement provided after the incident. (ECF 15-9, p. 47).

> Officer M. Davis (Matthew Davis) came to my cell and asked who had the property issue. Neither of us answered, and then Officer Davis said "Well, whoever it was they will be here in a couple minutes." Then Officer Kennell came to the cell door and said the same thing. Then I heard Officer Kennell tell my cell partner, " Do what you gotta do," and walked away. About an hour later, just before lunch, Wood grabbed my wrists and wouldn't let me off the bed but I was able to talk him down and make him let go of me. At lunch time, I talked to Officer Lark and told him I was feeling suicidal but he didn't do anything. Then at count time, I told Officers Davis and R. Beal that I needed to go on suicide watch and they started to walk away. As soon as I turned around, Wood hit me in the face with a feed up tray and I stared yelling for help saying CO, CO HELP ME!" Both of the officers came back but didn't do anything. I think they provoked my cell buddy Wood to assault me. A couple of minutes later, the officers came back and pepper sprayed me. I was taken to medical and Nurse Steve saw me. After Steve saw me, they put me in B1 until the next day for no reason.

*Id*. at. 6. Cooper stated he sustained a "big cut" above his eye and his nose was bleeding as a result of the incident. *Id.* Cooper told the IIIU investigator that he was "not safe having cell partners." *Id*. Cooper claimed Lieutenant Gordon and Captain told him they were going to try to send him to NBCI so he could be single celled. *Id*. at 7.[16]

Detective Liken interviewed Officer Matthew Davis, who when asked whether he recalled the incident, stated "Yes. That's the day he was beating his head off the door but said his cell buddy hit him with the feed up tray." *Id*. Matthew Davis said he was the officer–in-charge at the time and could not leave the control center. Davis denied Cooper's allegation that he had ordered Wood to assault Cooper. Liken also interviewed Officer Vincent Lark who denied knowledge of the incident until he saw the inmates being escorted from the wing. Lark stated "I remember now, but only because I saw them escorting Cooper and Wood off the tier. I am assigned to 'A' Wing so I wouldn't have been on 'B' Wing unless I was putting inmates in the 'B' Wing showers from 'A' Wing." *Id*. at 8. Lark denied that Cooper informed him he was suicidal. *Id.* Officer Michael Davis told the IIU investigator that:

---

[16] The IIU interviewer later spoke to Lieutenant William Gordon, who confirmed that he had advised Cooper of his intent to transfer him to NBCI. (ECF 15-9, p. 7).

> I heard Officer Bennett yelling, "Stop banging your head" and a call over the radio for assistance, so I went to the cell. When I got there, Cooper was still banging his head on the door, so I opened the feed up slot and Officer Bennett applied a burst of pepper spray. Cooper quit banging his head on the door, and Officer Bennett ordered Inmate Cooper to cuff up. When he got to the door, I put cuffs on him and then cuffed Inmate Wood. I called for the door to be opened, and when it opened, I escorted Wood to the strip cage in the property room until he could be evaluated by medical.

*Id*. at 9. Michael Davis denied assaulting Cooper or witnessing anyone else assault him. Officer Kennell was interviewed and stated he was not involved in the incident. Kennell denied telling Jovan Wood "do what you gotta do," and denied being present during the use of force. *Id.* at 10. Kennell denied assaulting Cooper or ordering Woods to assault Cooper. Beal advised he was not working in "B Wing," and denied any involvement in the incident or the escort afterwards. *Id*. When the IIU investigator asked Beal whether Cooper had informed he was suicidal, Beal said "No, I don't even know who[m] [sic] he is." *Id*. Beal denied that any inmate on March 3, 2014, informed him he was feeling suicidal. Beal denied witnessing anyone assault Cooper. *Id*. at 11.

Office James Bennett told the IIU investigator,

> I was conducting my formal count and when I got to Cooper's cell, he started kicking the door. I asked him what the problem was, but he didn't say anything. I continued doing my count, and when I got to the other side of the tier Cooper started beating on the door again, so I went back to his cell. When I got there, I observed Cooper beating his head on the door. I told him to stop an called for assistance over the radio. I looked into the cell and the other inmate, I think was inmate Wood, was standing at the back of the cell with his hands in the air, kind of like a surrender position. Cooper was still beating his head on the door and I again ordered him to stop. By then, Officer Michael Davis arrived at the cell and opened the feed up slot. I told Cooper again to stop or he was going to get pepper sprayed but he didn't comply so I applied a burst of pepper spray to him. After the pepper spray took effect, Cooper stopped beating his head. Officer Davis cuffed up both inmates and they were taken to medical.

*Id*. at 11. Bennett denied assaulting Cooper, witnessing anyone assault him, or ordering Wood to assault Cooper. *Id*. at 12.

13

The IIU investigation was concluded for lack of evidence. *Id*. at 14.

### 2. Declarations

Officer Matthew Davis attests that on March 3, 2014, Cooper did not inform him that he felt unsafe or suicidal. Davis was the officer-in-charge and could not leave the control center when he heard a radio call asking for assistance. Davis reported the incident to the shift commander. He denies retaliating against Cooper. (ECF 15-4).

Officer Nicholas Hetz attests on March 3, 2014, he responded to a call for officer assistance and witnessed Michael Davis applying hand restraints to Cooper and Wood. Davis escorted Cooper to the medical room for evaluation and treatment. Davis escorted Cooper to a decontamination shower. Hetz denies kicking, beating, or assaulting Cooper or witnessing other correctional officers doing so. (ECF 15-5).

## II.     Threshold Defenses[17]

### A. Respondeat Superior

In order for liability to exist under § 1983, there must be personal involvement by a defendant in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). Vicarious liability based on respondeat superior is generally inapplicable to § 1983 actions.

In order to establish a claim for supervisory liability under § 1983, a claim must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge

---

[17] The court is familiar with the Division of Corrections practice to decline investigation for an ARP where one is already before the IIU.

was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw*, 13 F.3d at 799.

Cooper does not claim defendants Bishop or Thomas were personally involved in the either incident, and presents no allegations to hold either official culpable under a theory of supervisory responsibility. Accordingly, defendants Bishop and Thomas will be dismissed.

### III.     Eighth Amendment Claims

The Eighth Amendment's prohibition against "cruel and unusual punishment" prohibits prison officials from inflicting pain unnecessarily and wantonly against prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) (It is the nature of force used by the correctional officer, rather than the extent of the prison inmate's injury, that is the relevant inquiry in an Eighth Amendment claim. An inmate's Eighth Amendment claim involves a "subjective component" and an "objective component." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). Specifically, the court must decide "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Where, as here, a prisoner makes an excessive force claim, the court's subjective component analysis "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citations omitted); *see also Williams*, 77 F.3d at 761.

This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to

the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley*, 475 U.S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 36–39 (2010). It is the nature of force used by the correctional officer, rather than the extent of the prison inmate's injury, that is the relevant inquiry in an Eighth Amendment claim. *See Hill*, 727 F.3d at 320–321. The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. Not every malevolent touch by a prison guard, however, gives rise to a federal cause of action for excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. *Id*. at 37.

An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v. Stansberry,* 772 F.3d 340, 346 (4th Cir. 2014); *see Farmer v. Brennan*, 511 U.S. 825, 833-35 (1994). In *Danse*r, the Fourth Circuit explained:

> An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right. *[Farmer*, 511 U.S.] at 834; *Brown v. N.C. Dep't of Corr*., 612 F.3d 720, 723 (4th Cir. 2010). First, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury."[ ] *Brown*, 612 F.3d at 723; *see also De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). . . . The second element … requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834 (citation and internal quotation marks omitted). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." *Id*. (citations omitted).

*Danser*, 772 F.3d at 346.

In order to prevail on an Eighth Amendment claim of failure to protect from violence, a plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific

16

known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 833-34 (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997). However, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995); *see Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). And, "[a] prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence...." *Makdessi, Id*.

Regarding the February 25, 2014, incident, Cooper states he was assaulted by Hetz, Davis, Wiburn, Logsdon, Brinegar and Barb. Cooper does not include in his complaint that the use of force was prompted by his altercation with his cellmate Coates. Matthew Davis attests he observed Office Hill directly and repeatedly ordering Cooper to stop assaulting his inmate Coates. Pepper spray was administered after Cooper failed to apply. Cooper continued the assault because the pepper spray canister was either empty or malfunctioning. Officer Hetz administered pepper spray and Cooper ended the assault. The Hetz declaration attests to facts consistent with those provided by Matthew Davis. Two defendants attest they did not interact

with Cooper during the cell incident: Brinegar was in the control center and Barb was not at work that day. Hetz, Davis, Wiburn, and Brinegar deny hitting, punching or kicking Cooper.[18]

Quite simply, Cooper was observed assaulting his cellmate and refused to comply with numerous orders to stop. A second short burst of pepper spray was used after the first failed to stop the assault in order restore safety and order. Under these circumstances, the nature of force use was reasonable and calculated to bring a volatile and dangerous situation under control. There is no evidence the officers acted with malicious or sadistic intent. Additionally, Cooper's injuries, which were described by the medical provider as minor abrasions, do not support his allegations of multiple assaults by several correctional officers. The court also observes the inconsistencies in the account of the events set forth in the complaint and those Cooper presented to the IIU investigator. Further, Cooper does not provide any exhibits to refute those submitted by defendants. In light of these circumstances, even when the facts are viewed in the light most favorable to Cooper, there is no genuine issue of material fact and summary judgment will be entered in favor of defendants as a matter of law.

Cooper's next claim is that on March 3, 2014, Officers M. Davis, Beal and Lark "allowed" his cellmate Javon Wood to injure him with a meal tray, and after Cooper was removed from his cell, Davis and Beal hit Cooper with a meal tray. As discussed, Cooper's account of this incident to the IIU investigator was notably different, and correctional personnel provided consistent statements during their interviews to refute his claims.[19]

Officer Matthew Davis attests that Cooper did not inform him on March 3, 2014, that he felt unsafe or suicidal, and was posted in the control center. Officer Hetz attests he responded to

---

[18] Logsdon did not provide a declaration. The record shows Logsdon told the IIU investigator he was in the Armory that day. (ECF 15-3,). Thus, Logsdon was not present during the incident.

[19] Cooper does not address the reason for the differing accounts in the complaint or his opposition response.

a call for assistance and witnessed Officer Michael Davis applying hand restraints to Cooper and Wood. Michael Davis escorted Cooper to the medical room for treatment. Lark denies that Cooper told him that he was feeling suicidal. Beal did not know Cooper and denied any inmate told him on March 3, 2014, that he was feeling suicidal. Cooper has not presented evidence to refute defendants' response, and no material and genuine issues of fact remain as to whether a constitutional violation has occurred. Accordingly summary judgment as to these claims is appropriate.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss or, in the alternative, motion for summary judgment will be granted. A separate order follows.

  September 8, 2015                                     /s/
Date                                                J. Frederick Motz
                                                    United States District Judge